08 CV 6595

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiffs
SAMANTHA INTERNATIONAL CORP. and
PETALON SHIPPING CO. LTD.
355 Lexington Avenue
New York, New York 10017
212-983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
SAMANTHA INTERNATIONAL CORP. and
PETALON SHIPPING CO. LTD.,

                Plaintiffs,

    -against-

INTERNATIONAL OVERSEAS OIL INC.; BAKRI
TRADING CO. INC.; MARINA WORLD SHIPPING
CORP.; TARAZONA SHIPPING CO., S.A.; SCHIFF
HOLDING CO. S.A.; and GRESHAM WORLD
SHIPPING INC.,

                Defendants.
--------------------------------------------------------------X

**VERIFIED COMPLAINT**

RECEIVED
JUL 2 4 2008
08 CV ... U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiffs, SAMANTHA INTERNATIONAL CORP. ("Samantha") and PETALON

SHIPPING CO. LTD. ("Petalon") (collectively "Plaintiffs"), by their attorneys, Brown Gavalas

& Fromm LLP, as and for their Verified Complaint against defendants INTERNATIONAL

OVERSEAS OIL INC. ("IOOI"); BAKRI TRADING CO. INC. ("Bakri"); MARINA WORLD

SHIPPING CORP. ("Marina World"); TARAZONA SHIPPING CO., S.A. ("Tarazona");

SCHIFF HOLDING CO. S.A. ("Schiff"); and GRESHAM WORLD SHIPPING INC.

("Gresham"), (collectively "Defendants"), allege upon information and belief as follows:

        1.     This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure.  The Court has jurisdiction under 28 U.S.C. § 1333.

2.      At all material times, plaintiff Samantha was and now is a foreign corporation organized and existing under and by virtue of the laws of Liberia with an office and place of business at 80 Broad Street, Monrovia, Liberia.

3.      At all material times, plaintiff Petalon was and now is a foreign corporation organized and existing under and by virtue of the laws of Malta with an office and place of business at 198 Old Bakery Street, Valletta, Malta.

4.      Upon information and belief, at all material times defendant IOOI was and still is a foreign corporation organized and existing under and by virtue of the laws of Panama, with an address at c/o Al Bakri Building, P.O. Box 3757, Al-Andalus Street, Jeddah 21424, Kingdom of Saudi Arabia.

5.      Upon information and belief, at all material times defendant Bakri was and still is a foreign corporation organized and existing under and by virtue of the laws of a foreign country, with an address at c/o Al Bakri Building, P.O. Box 3757, Al-Andalus Street, Jeddah 21424, Kingdom of Saudi Arabia

6.      Upon information and belief, at all material times defendant Marina World was and still is a foreign corporation organized and existing under and by virtue of the laws of a foreign country, with an address at c/o Al Bakri Building, P.O. Box 3757, Al-Andalus Street, Jeddah 21424, Kingdom of Saudi Arabia.

7.      Upon information and belief, at all material times defendant Tarazona was and still is a foreign corporation organized and existing under and by virtue of the laws of a foreign country, with an address at c/o Al Bakri Building, P.O. Box 3757, Al-Andalus Street, Jeddah 21481, Kingdom of Saudi Arabia.

8.      Upon information and belief, at all material times defendant Schiff was and still is

a foreign corporation organized and existing under and by virtue of the laws of a foreign country, with an address at c/o Al Bakri Building, P.O. Box 3757, Al-Andalus Street, Jeddah 21481, Kingdom of Saudi Arabia.

9.      Upon information and belief, at all material times defendant Gresham was and still is a foreign corporation organized and existing under and by virtue of the laws of a foreign country, with an address at c/o Al Bakri Building, P.O. Box 3757, Al-Andalus Street, Jeddah 21481, Kingdom of Saudi Arabia.

10.     At all material times, Petalon was the registered owner of the motor vessel ALDEBARAN.

11.     At all material times, Samantha was the registered owner of the motor vessel ARIETIS.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR DEMURRAGE OWED FOR THE M/V ALDEBARAN

12.     Plaintiffs hereby reassert and reallege Paragraphs 1 through 11 as if fully set forth herein.

13.     On or about October 5, 2007, October 11, 2007, and October 26, 2007, plaintiff Petalon, as owner, and IOOI, as charterer, entered into three separate voyage charter agreements whereby Petalon agreed to let, and IOOI agreed to hire, the M/V ALDEBARAN to transport three cargoes of fuel oil, under certain terms and conditions, from Fujairah, United Arab Emirates to Pakistan ("the ALDEBARAN Charterparties").

14.     Under the terms of each ALDEBARAN Charterparty, IOOI was entitled to 84 hours laytime, Sundays and holidays included.  Demurrage was agreed at a rate of $19,000.00 per day, pro rata.

15.     Under the October 5 ALDEBARAN Charterparty, IOOI used 126 hours and 6

minutes of laytime, exceeding the allowed laytime of 84 hours by 42 hours and 6 minutes. Therefore, at the agreed demurrage rate, less 2.5% commission, demurrage of $32,495.94 is due and owing to Petalon.

16.     Under the October 11 ALDEBARAN Charterparty, IOOI used 85 hours and 30 minutes of laytime, exceeding the allowed laytime of 84 hours by 1 hour and 30 minutes. Therefore, at the agreed demurrage rate, less 2.5% commission, demurrage of $1,157.81 is due and owing to Petalon.

17.     Under the October 26 ALDEBARAN Charterparty, IOOI used 104 hours and 58 minutes of laytime, exceeding the allowed laytime of 84 hours by 20 hours and 58 minutes. Therefore, at the agreed demurrage rate, less 2.5% commission, demurrage of $16,183.64 is due and owing to Petalon.

18.     Despite due demand therefor, IOOI has refused to pay the sums listed above, for which IOOI is liable.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR DEMURRAGE AND BUNKER CHARGES FOR THE M/V ARIETIS

19.     Plaintiffs hereby reassert and reallege Paragraphs 1 through 11 as if fully set forth herein.

20.     On or about October 18, 2007, plaintiff Samantha, as owner, and IOOI, as charterer, entered into a voyage charter agreement whereby Samantha agreed to let, and IOOI agreed to hire, the M/V ARIETIS to transport a cargo of fuel oil, under certain terms and conditions, from Fujairah, United Arab Emirates to Pakistan, via VOPAK terminal Fujairah ("the ARIETIS Charterparty").

21.     Under the terms of the ARIETIS Charterparty, IOOI was entitled to 132 hours laytime, Sundays and holidays included.  Demurrage was agreed at a rate of $18,000.00 per day,

pro rata.

22.     Under the ARIETIS Charterparty, IOOI used 176 hours and 44 minutes of laytime, exceeding the allowed laytime of 132 hours by 44 hours and 44 minutes. Therefore, at the agreed demurrage rate, less 2.5% commission, a demurrage charge of $32,711.25 is due and owing to Samantha.

23.     Under the ARIETIS Charterparty, IOOI was to be responsible for bunkers consumed during loading/discharging operations from Fujairah to the VOPAK terminal.

24.     Surveys conducted on October 22, 2007 and October 28, 2007 revealed that the ARIETIS consumed 117.35 metric tons of fuel oil and 21.04 metric tons of marine diesel oil during the relevant operations.

25.     IOOI was responsible for bunkers used at a rate of $468.00 per metric ton of fuel oil and $712.00 per metric ton of marine diesel oil.

26.     Accordingly, a balance of $69,900.28 (117.35 tons fuel oil @ $468.00 per ton and 21.04 tons marine diesel oil @ $712.00 per ton) is due and owing to Samantha.

27.     Despite due demand therefor, IOOI has refused to pay the sums listed above, for which IOOI is liable.

## **ALTER EGO LIABILITY**

28.     At all material times, there existed such unity of ownership and interest between Defendant IOOI and Defendants Marina World, Tarazona, Schiff, Gresham, and Bakri that no separation existed between them and the corporate form of Defendant IOOI has been disregarded such that Defendant IOOI primarily transacted the business of Defendants Marina World, Tarazona, Schiff, Gresham, and Bakri, or *vice versa,* and, therefore, they are the alter egos of each other with respect to the charter of the motor vessels ARIETIS and ALDEBARAN.

29.     At all material times, Defendant IOOI and Defendants Marina World, Tarazona, Schiff, Gresham, and Bakri have or had overlapping ownership, partners, management, personnel, and purposes such that Defendant IOOI and Defendants Marina World, Tarazona, Schiff, Gresham, and Bakri did not and do not operate at arm's length.

30.     IOOI and Defendants Marina World, Tarazona, Schiff, Gresham, and Bakri transact business with third parties collectively, with IOOI frequently acting as Bakri's chartering arm.  IOOI is also often nominated as a counter-party and guarantor to support the trades conducted by defendant Bakri.

31.     All of the Defendants, including IOOI, are nominally owned and controlled by members of the Al Bakri family of Saudi Arabia and all of the Defendants, including IOOI, are operated, controlled and managed as a single economic enterprise known as the "Bakri Group."

32.     The address used by the putative defendant IOOI, i.e. Al-Andalus Street, P.O. Box 3757, Jeddah, 21424, Saudi Arabia is also known as the "Al Bakri Building", and it is used by a variety of Bakri prefixed companies, including Defendant Bakri, as well as the other Defendants Marina World, Tarazona, Schiff, and Gresham.

33.     At all material times, there has been an intermingling of funds between Defendant IOOI and Defendants Tarazona, Schiff, Gresham and Bakri with respect to the charter of the motor vessels ARIETIS and ALDEBARAN.

34.     On July 3, 2007, the Defendant Gresham made a partial hire payment on behalf of IOOI in respect to a charter concerning the vessel M/T ESMERALDA in the sum of US $136,335.00 to satisfy the contractual obligations of its alter ego, IOOI, in circumstances where Gresham was not contractually obligated to make a payment regarding the M/T ESMERALDA.

35.     On July 5, 2007, the Defendant Tarazona made a second partial hire payment on

behalf of IOOI in respect to the charter of the vessel M/T ESMERALDA in the sum of US $135,835.00 to satisfy the contractual obligations of its alter ego, IOOI, in circumstances where Tarazona was not contractually obligated to make a payment regarding the M/T ESMERALDA.

36.     On December 17, 2007, the Defendant Bakri made a partial hire payment on behalf of IOOI in respect to the charter of the vessel M/T NAPA in the sum of $58,695.00 to satisfy the contractual obligations of its alter ego, IOOI, in circumstances where Bakri was not contractually obligated to make a payment regarding the M/T NAPA.

37.     On January 30, 2008, the Defendant Schiff made a second partial hire payment on behalf of IOOI in respect to the charter of the vessel M/T NAPA in the sum of $59,061.03 to satisfy the contractual obligations of its alter ego, IOOI, in circumstances where Schiff was not contractually obligated to make a payment regarding the M/T NAPA.

38.     It is not general practice, or usual in the maritime community, nor anywhere else, for independent companies to make or receive large payments on behalf of other independent entities.

39.     The significant payments made by Defendants Tarazona, Schiff, Gresham, and Bakri on behalf of Defendant IOOI, indicate that the entities do not operate at arm's length and funds are commingled between them.

40.     Shehariyar Backer, who holds himself out to the world as the Chartering Manager for the Defendant Bakri, chartered the motor vessels ARIETIS and ALDEBARAN on behalf of Defendant IOOI.

41.     The Defendant IOOI uses the alter ego Defendants Tarazona, Schiff, Gresham, and Bakri as a "paying or receiving agents" or "pass through" entities in disregard of corporate formalities and in an attempt to insulate IOOI's funds from lawful creditors such as Plaintiffs.

42.     At all material times, Defendants Tarazona, Schiff, Gresham, and Bakri have dominated, controlled and used the Defendant IOOI for their own purposes such that there is no meaningful difference between the entities.

43.     At all material times, Defendants Tarazona, Schiff, Gresham, and Bakri have disregarded the corporate form of Defendant IOOI to the extent that Defendants Tarazona, Schiff, Gresham, and Bakri were actually carrying on the business and operations of IOOI as if the same were its own, or *vice versa.*

44.     Upon information and belief, Defendants are guarantors of the obligations of each other Defendant.  Moreover, the ARIETIS and ALDEBARAN Charterparties contemplate that IOOI can nominate third parties to undertake its obligations under the Charterparties, subject to IOOI guaranteeing said third party's obligations.

45.     There are reasonable grounds to conclude that the Defendants Tarazona, Schiff, Gresham, and Bakri are the alter egos of Defendant IOOI or *vice versa* and, therefore, Plaintiffs have a valid prima facie *in personam* claim against Defendants Tarazona, Schiff, Gresham, and Bakri based upon alter ego liability.

46.     Additionally, and/or alternatively, the Defendant IOOI utilizes the Defendants Tarazona, Schiff, Gresham, and Bakri to transfer funds through, to and from the Southern District of New York on its behalf or *vice versa* in an attempt to evade Process of Maritime Attachment and, therefore, such parties are liable to the Plaintiffs as partners or joint venturers of the Defendant IOOI.

47.     Under the terms of the various charter parties, the parties agreed to settle all disputes by arbitration in London.  Plaintiffs are now preparing to commence London arbitration proceedings.

48.    This action is in aid of said London arbitration proceedings. Plaintiffs seek to obtain adequate security to satisfy a potential arbitration award in Plaintiffs' favor.

49.    In addition to recovering the principal amount due Plaintiffs pursuant to the Charterparty, Plaintiffs also fully anticipate recovering interest, costs and attorneys' fees, which are routinely awarded to the prevailing party in London arbitration. As best as can now be estimated, Plaintiffs anticipate recovering the following amounts in the London arbitration:

| | | |
|---|---|---|
| a. | On the principal claim | $152,448.92 |
| b. | 3 years of interest at 6% per annum, compounded quarterly | $29,821.78 |
| c. | Costs (arbitration fees, attorneys' fees etc.) | $50,000.00 |
| | TOTAL | $232,270.70 |

50.    Upon information and belief, Defendant cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but is believed to have or will have during the pendency of this action assets within this District, specifically including cash, funds, freight, hire, accounts and other property, in the hands of garnishees in the District including, but not limited to, American Express Bank, Ltd.; ABN-AMRO Bank; Bank of Tokyo Mitsubishi UFJ Ltd.; Barclays Bank; Calyon; Standard Chartered PLC; HSBC Bank; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Deutsche Bank; Citibank; Mashreq Bank; Bank of China; UBS AG; and Wachovia Bank, which are believed to be due and owing to the Defendant.

Plaintiffs pray:

A.  That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath

all and singular the matters alleged in the Verified Complaint;

B. That because the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including American Express Bank, Ltd.; ABN-AMRO Bank; Bank of Tokyo Mitsubishi UFJ Ltd.; Barclays Bank; Calyon; Standard Chartered PLC; HSBC Bank; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Deutsche Bank; Citibank; Mashreq Bank; Bank of China; UBS AG; and Wachovia Bank, which are due and owing to the Defendant, in the amount of $232,270.70, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B, answer the matters alleged;

C. That this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

D. That Plaintiffs have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
July 24, 2008

> BROWN GAVALAS & FROMM LLP
> Attorneys for Plaintiffs
> SAMANTHA INTERNATIONAL CORP. and
> PETALON SHIPPING CO. LTD.
>
> By: _____
> Peter Skoufalos (PS-0105)
> 355 Lexington Avenue
> New York, New York 10017
> 212-983-8500

**VERIFICATION**

STATE OF NEW YORK    )
                            : ss.:
COUNTY OF NEW YORK  )

PETER SKOUFALOS, being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and of the firm of Brown Gavalas & Fromm LLP, attorneys for Plaintiff.

2.      I have read the foregoing Verified Complaint and I believe the contents thereof are true.

3.      The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.      The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

PETER SKOUFALOS

Sworn to before me this
24th day of July 2008

Notary Public

EVAN B. RUDNICKI
Notary Public of the State of New York
No. 02RU6142314
Qualified in Rockland County
Term Expires March 13, 20_10_

11